Case number 18-3446, the United States of America v. Shawn Parrish. Oral arguments not to exceed 15 minutes per side. John Anderson and Tyler Owen for the appellant, Melissa Salinas, supervising. Good morning. May it please the court. I'm Melissa Salinas from the University of Michigan Law School. I'm the supervising attorney. I'd like to thank the court for allowing the students to argue this case. I have the honor of introducing John Andresen and Tyler Owen. Thank you. All right. Which one of you is going first? Morning. Good morning. May it please the court. My name is John Andresen, and I'm representing the appellant, Mr. Shawn Parrish, in today's proceedings. I'll be covering the Fourth Amendment section of Mr. Parrish's argument. The government's ever-shifting theory in this case is simply a ploy to distract this court from the fact that Agent Simon specifically sought authorization for the contested search in this case but did not receive it. The Supreme Court stated in Grover v. Ramirez that just because a magistrate judge has issued a warrant does not necessarily establish that that magistrate judge agreed the scope of the search should be as broad as the fine requested. As such, law enforcement has a duty to read the warrant and can find the execution of that warrant to what is actually set forth in the warrant. In this case, there is no disputing that Agent Simon wanted to search any cell phones found on the premises. What about the phrase digital media? That's in the warrant, digital media. That is correct, Your Honor. And in the abstract, wouldn't that cover a cell phone? A cell phone does contain digital media on it, but Agent Simon specifically asked for to search any individuals who may have mobile computing devices concealed on their person and any computer or digital media located there on that person. As the government concedes in page 6 of the reply brief, this language was specifically included because Agent Simon wanted to search cell phones. He did not receive it. Any computers or digital media was confined to computers found in the residence, not computers located on any individuals. Counsel, we've all seen a number of these cases, and the offending pornography quite often, most of the time even, is found on cell phones. Well, in this case... So we're looking for pornography, right? Yes, Your Honor. And the warrant allows that, and then it had media. Yes, it had digital media. That actually includes a phone, I think. So what's the real sin here by the agent? The sin here is that Agent Simon specifically sought authorization. He asked to search any individuals who may have mobile computing devices concealed on their person. Is this at the door? What was that, Your Honor? Where did he seek this? You're referring to the request to the magistrate? Yeah, in the warrant application. I see. And the magistrate judge did not approve this. So this is a good point, right? They asked for something a little more specifically. The magistrate says no, although you have to acknowledge no explanation. But why isn't that perhaps question-begging, right? I mean, it's possible the magistrate said no because he thought what I've already allowed covers that. Isn't that possible? Grover Ramirez says that law enforcement must assume that when a scope limitation is placed on a warrant, that they don't get to question the reasoning behind that. Now, it is true that a cell phone does contain digital media, but cell phones are located on individuals and not in the residence. And the government's new theory is they're essentially asking the court to read the warrant in a way that raises serious over-breath issues. Had they raised this issue at the lower level. Can I ask a question? If they found the cell phone in the house, could they have searched it? In this case, no. Not on a person? Why not? So in this case, no, because Agent Simon specifically saw it. He separated computers located. Well, let me ask you this. If I say I want to search for drugs in the house, courts routinely say you can look anywhere you can find drugs, right? You can look in every nook and cranny. Now, as Judge Cook just pointed out, when you're asking to look for pornography and things like that, it's almost always on the cell phones or computers. So I don't understand why if a cell phone's not sitting on a table and you say, I want to look wherever I can find in this house for pornography, the fact that something that he asked for doesn't make it ultimately into the warrant is of consequence, as Judge Sutton just pointed out, if we don't know why he turned or didn't put that language in. So I have two responses to that. First, in this case, law enforcement only knew that a computer, not a cell phone, a computer using Ms. Meckley's IP address had several videos of child pornography on it, and this was a shared residence. Second, this court stated in United v. State, Richard, that analyzing computer searches to other physical objects when applying the Fourth Amendment law is not an exact fit, and with searches involving computers, it's ultimately looked at on a case-by-case, fact-specific basis. At a minimum, doesn't the difficulty of this problem suggest that Leon would apply? So I agree, yes, if Leon applied, the result is that it should still be suppressed. In United States v. Leon, footnote 22, the court said all circumstances must be considered in the objective, reasonable analysis, which means the fact that Agent Simon included language that would specifically authorize him to search cell phones. The bad faith is seeking it, having it denied, and then still doing it. Exactly. That's good, only if the thing that was allowed clearly prohibits it. Otherwise, we're back to maybe that's why the magistrate denied the second request. He didn't need it. It stretches common sense to think that a magistrate judge would limit the scope of a search to make it broader. Agent Simon had asked to search for computers in the residence. I'm not saying to make it broader because it was unnecessary. Unnecessary. I'm out of time. May I answer your question? Yeah, sure. Why don't you, in a sentence or two, give us a shot? Did you reserve some rebuttal? I can't remember. We reserved three minutes. Good. Just give me a sentence or two, and then we'll hear the rest later. Sorry, could you repeat your question again? The question is on Leon Goodfaith. It's a good point. The point is, hey, they had one request to the magistrate of specifically being allowed to search cell phones. They didn't get that, so how does Leon Goodfaith apply? To make sure you're getting what's hard about it is the magistrate might have denied the second request because the first one was broad enough it would cover cell phones anyway. See digital media or see you can search the house for any visual depictions of minors engaged in sexually explicit conduct. Yeah, my response to that would be it is also possible the magistrate judge thought that because this was a shared residence with three people and law enforcement had no idea who was responsible, all they knew was a computer in there had child pornography on it, that the magistrate judge wanted to limit the scope to just computers and didn't think it was reasonable for law enforcement to be able to seize any individual cell phone who was located at the residence. Good. Makes sense. All right, we'll hear from your classmate slash co-counsel. Thank you, Your Honors. My name is Tyler Owen from Mr. Parrish, and I'll be covering a sentencing issue. The sheer breadth of the indecent liberty statute in North Carolina renders it too broad to serve as the predicate offense justifying Mr. Parrish's mandatory sentence. The broad statutory language has only been made broader by interpretations of the North Carolina courts. Mr. Parrish's sentence must be vacated and remanded for two reasons. First, under this court's holding in United States v. Mateen, because the North Carolina indecent liberties offense does not require either physical contact or an abusive effect on the victim, it cannot be sexual abuse. Two, because the North Carolina indecent liberties offense, as construed by the North Carolina courts, does not necessarily involve a minor victim, it cannot be abusive sexual conduct involving a minor. Now, I would just like to begin with the sheer scope of the indecent liberties offense. Courts have been very clear in North Carolina that the statute was meant to go broader than the prior laws have provided. It was meant to cover conduct that may not be inherently abusive. For instance, in State v. Terman, the court said that when deciding whether physical contact is required by the statute, the court said no physical contact. What level court, when you say that, what level? It was the North Carolina Court of Appeals. And the court said the purpose of the statute is to give broader protection than the prior laws provided. And in a later decision, the North Carolina Supreme Court, in Hartness, said that, quote, the gravamen of the defense is the defendant's mens rea, and the particular act performed by the defendant is, quote, immaterial. So I thought you said at the beginning you were going to say that the North Carolina statute isn't limited to minors? Yes. So what's your authority for that, and is that Supreme Court, or where are you coming from on that one? In State v. Healan, it was the North Carolina Court of Appeals. So the fact pattern was the defendant was interacting with a police officer posing as a minor online, and even though there was no actual minor involved, the court said that's sufficient for the indecent liberties conviction. So underlying that reasoning was, again, the citations to decisions like State v. Hartness. The federal statute, it says, relates to abusive sexual conduct involving a minor, and you could say an attempt to do something with a minor, and that would seem to be an attempt. They thought it was a minor. Sure. Well, the categorical approach still compares what's required under both the generic statute and the State offense. If it's an offense, that may render it divisible, in which case the court would have to look at the Shepard documents. We don't have any Shepard documents in the record, so it's hard to tell at this stage exactly what the elements were. We do have the PSR, but of course that's not a Shepard document. What seems hardest about this argument is the relates to language. Sure. Well, this court in United States v. McGrattan addressed that argument and explicitly rejected it. It said that, quote, the underlying concern in the protection of the defense is the protection of the jury trial right. This is in talking about the categorical approach and why courts use it. So the categorical approach protects the defendant's jury trial right under the Sixth and Fourteenth Amendments. And, quote, the difference in the statutory language, whether that's including relating to or not including relating to, in Section 2252a)(b)(1), is, quote, immaterial in the constitutional context. That's from United States v. McGrattan, 504 F. 3rd at 612. So this court has already addressed that argument, and it's really meant to sort of undercut the categorical approach. But because this court has already addressed that argument, this court is bound by that reasoning in United States v. McGrattan. Now, because even applying the categorical approach, if a minor victim may not always be involved in the offense, it cannot serve as the predicate. For example, in this court's first panel decision in United States v. Mateen, the question was whether the Ohio State offense qualified as sexual abuse of a minor. Of course, the question changed in the later panel decision once this court heard the case en banc. But in the first panel had to decide whether the Ohio statute required the involvement of a minor. Because the court held that it did not involve a minor in every case, the court said that it could not qualify as sexual abuse of a minor. And that reasoning is instructive here. It's the same question except applied to the abusive sexual conduct instead of the sexual abuse component. Now, finally, in closing, this court has not previously defined abusive sexual conduct involving a minor, but we ask that this court at least give effect to the word abusive. Because if Congress wanted to include all sexual conduct involving minors within the scope of Section 2252, it could have said that. But Congress didn't say that. It said abusive sexual conduct involving a minor. That word must be given effect. The United States, in the United States v. Osborne, the Seventh Circuit, followed precisely that reasoning, and we think that that reasoning is instructive here. For these reasons, we ask that this court vacate Mr. Parrish's sentence and remand for resentence. Thank you. All right, thank you. From the government. May it please the Court, Kevin Kohler on behalf of the United States. This court should affirm the district court on all three issues on appeal here. Suppression of the images and videos taken from defendant's cell phone is not warranted. Defendant's prior conviction for taking indecent liberties relates to both sexual abuse and abusive sexual conduct triggering the sentencing enhancement. And the third issue, the term lascivious excavation of the genitals or pubic area, is not vague as applied to the images here. Turning first to the warrant, suppression is not proper. Is there any sense of why the magistrate didn't authorize search of persons? There is not, Your Honor, and with respect to that, I think it's relevant that the district court found that there was no evidence in the record that the magistrate intended to limit the scope of the search warrant. Why isn't that evidence that he intended to limit the scope? What is that? That they asked for it and he said basically no by not including it. There's, I guess, two answers to that, Your Honor. One is he also signed both the warrant, the warrant application, and the warrant affidavit, which to the extent there's some ambiguity would push that towards an indication that he did not mean to limit the breadth of the scope. And then the other point that I think— What do you mean by that? You're saying because he signed these exhibits attachments that proves he made a mistake? He really did mean to authorize search of persons? What's the point you're making? I think the point I'm making there is that's one piece of evidence that when we're looking to see if the magistrate intended— When he signs the affidavit, for example, he's just saying that it was sworn to in front of me. He's not swearing to the contents or authorizing the contents. He's using that to make his probable cause determination. That's correct, Your Honor. So why does that have any bearing? It's bearing probably more relevantly on the good faith portion because in the good faith analysis we look at what a reasonable— I have a little bit of heartache with the idea that he specifically didn't include it and then the officers did it nonetheless. And relevant to that point is that the warrant itself did include computers. The warrant affidavit defined computers in a broad sense using a statutory definition that's been held to incorporate cell phones. So I think we're back left to some ambiguity about whether or not the magistrate intended to limit the scope of the warrant or whether he thought that computers as a broad common sense definition would include cell phones. Yeah, but I mean in the context of seeking a search of persons, not getting it, then when you think of computers, you're like people don't really have computers in their pocket like regular hard frame computers. And so that suggests the computer language is not really applying to cell phones, which very much are on persons. So I guess two responses to that, Your Honor. One is, you know, various courts have adopted the idea that computers are cell phones. And two, that gets pivoting more to the good faith argument, it's whether it can still be objectively reasonable. Can I ask you a related question to my drug analogy, which is if the officers seek to get drugs from the house and the three persons in it and their bodies, and all that's included is the house, does that mean they can search the persons inside? So the same scenario except just change it. In this situation, it would, Your Honor, because you're dealing with a small and confined space. You're dealing with individuals. So you could search their pockets and their body? You could, Your Honor, and that's what the Eighth Circuit explicitly found in Cohen, although that was a case where they searched, found keys, and seized the keys. We think Romero would also be on point here because what you're doing with, again, is a small confined space, a limited number of people, people who are known to law enforcement, people who are actually named in the affidavit, and with respect to Mr. Parrish, people who the agents knew. So even though the magistrate said it doesn't include it, you would be allowed to do it? If it was very clear on the face and there was evidence in the record indicating it. Well, it's clear. You ask for persons, just like you did here, and the magistrate did. The judge does not include it in the group. Yes. So because it's specifically identifying computers, though, and in Cohen the warrant specifically mentioned keys, so you can look for the computers. If the computer is lying out on the table, if someone takes a computer and puts it in their pants or shoves it in their backpack, that would still be permitted to be searched. Why shouldn't we just, as a matter of practicality, place the burden on the officers if they don't get what they want to clarify it with the magistrate at the time? It forces them to read it. It forces them to digest what they've got. It takes just a couple minutes, and then they can go and ask for a clarification. That is definitely approached. You had like 20 people here. 20 people? This seemed like overkill. Am I right? Were there 20 people? 20 people. Doing the search. There were 11 officers on the scene. Okay. All right, 11. One of them could have called the magistrate. It created a lot of jeopardy. I think under Leon addresses that situation so that if there wasn't an objective good faith reason to believe that the warrant covered the search of the computers, then Leon certainly would require the agents to go and seek that clarification. I guess I agree. I was going to ask a question. Go ahead. I wondered if the counsel's point about defense counsel making the point that the house being occupied by three individuals might explain the denial in the warrant of the cell phone aspect. I mean, what's the government think about that? That's a possible explanation for the saying no, no, not cell phones because that we don't know. We think it's on a computer. The affidavit here I think makes clear that child pornography is often used and facilitated by mobile computing devices. Indeed, but the magistrate would know that too and said no. Again, it's looking at what it would be an objective reasonable officer could believe based on what the magistrate said. I agree. All those officers think it's probably on a cell phone. Right? They're all standing there. Everybody thinks that. But in the face of what occurred with respect to the warrant and being told no, that's what I'm wondering. Counsel makes a good point about the multi-resident situation that was part of this thinking. It was a multi-resident situation, but you're still dealing with a limited number of people, a small and confined space. Child pornography is easily transferable from one device to another. And then under the good faith analysis, it's based on what the objective officer might reasonably believe and whether he reasonably believed that the search warrant incorporated cell phones as a species of computers and whether or not he reasonably believed that the affidavit was incorporated into the warrant here. And then the affidavit itself clearly indicates a desire to search mobile computing devices, which include smart phones. I think Judge Thapar had another question. No, you covered it. Thank you. What about the consent possibility? We have a finding. Consent provides the third independent basis for not suppressing the evidence here. Relevant here, the district court conducted a totality of the circumstances factual analysis, which this court reviews for clear error, found that there was no physical force, found that the defendant voluntarily agreed to be interviewed when he followed Agent Saxton into the trailer. Probably most relevantly, the district court found that there was no credible evidence that the defendant was ever told that he had to surrender the phone pursuant to a warrant. He also cooperated in unlocking the cell phone. He was told they had a warrant, right? And he could have assumed it was for the cell phone. He could have, Your Honor, and he testified that he did, but there was no evidence that he was ever told that it was for the cell phone. But they didn't specifically ask for consent, right? They asked for the phone, asked him to change the passcode. Did they ask for consent specifically? There's no indication in the record that they ever used a specific term, consent. Obviously, various courts, including this one, found that consent can be indicated through verbal and nonverbal. So simply in response to a question, can I have your cell phone, turning it over, would indicate that he did consent. And that's kind of one part of the totality of the circumstances here. He was in the mobile lab when he, right, when they asked and got the phone. Okay. And they asked for the phone after they had read him his Miranda rights, and he testified that he was aware of his Miranda rights at the time, which again is another factor that goes into there. What role does Bumper v. North Carolina have to play? Does it have any role at all still? Is there something Bumper independently does in terms of limiting consent rulings? Bumper, we're not arguing that Bumper is no longer good law. Bumper comes into play if there is evidence that the search was held out to be or the officers represented or claimed lawful authority to search the device. So if the officers came in and said, we have a search warrant to search that device, hand over your phone pursuant to this search warrant, Bumper would still apply. Bumper, I think, still has to be read in light of Schneckloff and the various factors. So that's not a per se rule. And there are other out-of-circuit cases which have said the mere presence of a warrant doesn't trigger Bumper unless there's some claim to authority. Just as the absence of the word consent isn't dispositive, is the absence of the actual words in Bumper not dispositive? In other words, it can all be what you see and the number of officers. You're in this closed container. I would agree with that. It's a very fact-specific inquiry, and that's exactly what the district court looked at here. So if the facts indicate that there was a claim to authority to search that specific device, then that should be taken into account as part of the totality of the circumstances. Here the district court. Did Judge Marbley take that into account? I mean, I know he has a fact finding, but does he actually take that point into account? He does. His opinion explicitly addresses the duress and coercion argument that the defendant asserted below. And he specifically discredited the defendant's testimony that he was patted down, that an agent picked his cell phone out of his pocket and said, this is covered by the warrant, and then put it back in his pocket. And Judge Marbley simply said, that's not credible. Removed that from the analysis, and the totality of the circumstances indicated consent. Unless there are further questions on the Fourth Amendment issue, I'll turn to the second issue, the sentencing issue. Here we submit that the court should follow the Fourth Circuit's reasoning in Gilbert and find that North Carolina Statute 14202.1 relates to both sexual abuse and abuse of sexual conduct involving a minor consistent formulation that many circuits have applied to here. It's that it includes physical or non-physical misuse or maltreatment with a minor for a purpose associated with sexual gratification. The North Carolina statute fits within this pretty easily. To the extent the court looks to Mateen to identify what counts as sexual abuse, the second prong, we submit that the first definition contained in Mateen, on pin site 861, is actually the controlling definition. There, the circuit defines sexual abuse as connoting the use or treatment of, so as to injure, hurt, or damage for the purposes of sexual or libidinal gratification. No requirement of physical contact. No requirement that the victim be aware of the abuse at the time. What about the point that was made that some North Carolina courts have said it applies where you actually don't even have a minor? It may look like you have a minor, but in truth, there wasn't a minor. That would fall, I think, under the category of attempt. It would also, I think, as relevant here, is the relating to language. That's still good law, I believe, in this circuit and other circuits. The relating to indicates it should be read broadly so that even if it's an attempt and you're dealing with an undercover officer, that still is a crime that relates to the abuse of sexual conduct involving a minor and relates to sexual abuse, which involving a minor doesn't apply to there. If there are no further questions, we'll rest on our brief and ask that this court affirm. All right, thanks so much. Time for rebuttal. Is it Mr. Andreessen? Yes, sir. May it please the court. During the government's presentation, you asked why isn't the burden on the law enforcement officer to ensure that everything that was requested was authorized. This court, well, in Grovey-Ramirez, the Supreme Court did put the burden on law enforcement, and this court, and in United States v. Rarick, stated this burden is even greater when the officer executing the warrant prepares the affidavit in support of the warrant, drafts the warrant, and applies for the warrant. That was Agent Simon in this case. Despite the scope limitation, he testified it was his duty to search any individual found on the premises for digital media. This is an overly broad warrant. Ultimately, the Fourth Amendment requires reasonable risk. When did he testify that it was his duty to search everything, anything? You say he's testified? Yeah, during the suppression hearing. Suppression, that's what I thought. Yes. Okay. So what's the point of, what's so wrong about that, or how's that help defense here? The warrant did not authorize that by its terms. Oh, and despite not being authorized, he was just doing it anyway. Exactly. That's your point, I see. Now, in computer searches under United States v. Leon, it's a case-by-case, fact-specific inquiry. The scope limitation on the warrant made it reasonable. Law enforcement knew a computer... What if we don't know? What if we're just not sure why he turned it down? Well, as the Supreme Court stated in Grove v. Ramirez, unless everything set forth in the warrant application is included in the warrant, there is no assurance that the magistrate judge actually found probable cause for the full scope of the search. But if we're not sure, why wouldn't good faith be appropriate? Because this is not... Wouldn't we have to infer bad faith in this circumstance, basically? Isn't that what you're asking us to do? There's no affirmative finding of bad faith, obviously. What I'm asking is law enforcement had a duty to actually read the warrant and limit the scope of their search to what the warrant put forward. There was a scope limitation in this case. Agent Simon did not do that. That is Agent Simon's error. The magistrate judge did not make this error. Therefore, good faith does not apply. It is not objectively reasonable for a law enforcement officer to ask permission to search A and B, only receive A, but search A and B anyways. And on to the consent issue. It is true the lower district court did not apply Bumper v. North Carolina because they said, in that case, the law enforcement didn't have a warrant, as we put forward in our brief. That is not true. Ultimately, Mr. Parrish did not hand over his cell phone voluntarily. He did it because 13 federal agents seized control of his house pursuant to federal authority, and a man with a gun, a badge, and a search warrant asked him to hand over his phone. In conclusion, because Agent Simon did not appraise himself of the scope of the warrant, the exclusionary rule retains its deterrence value, and the evidence must be suppressed. Thank you. All right. Thank you to all three of you for your helpful arguments and briefs. Thank you, Ms. Salinas, for bringing your students, Mr. Andreessen and Mr. Owen. Nice job. I mean, if you can master the categorical approach, you can master anything, I would say, and Fourth Amendment is kind of a close second on that front. So thanks to all three of you. We appreciate it. The case will be submitted. The clerk may call the next case.